**Mrs. Nancy K. STEELE, Plaintiff-Appellant,**

v.

**G. D. SEARLE & CO. et al., Defendants-Appellees.**

No. 73–1308

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1973.

Rehearing and Rehearing En Banc Denied Oct. 31, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Alfred N. Crisler, Jackson, Miss., Bradley Post, Wichita, Kan., for plaintiff-appellant.

Cary E. Bufkin, Roland D. Marble, Jackson, Miss., for Searle, Foremost and Meyer.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

The debate over the wisdom of the constitutional grant of diversity jurisdiction has much currency, as well as many argumentative antecedents. The reaches and restrictions of the grant are and have been constantly before committees, commissions, and the Congress. While reports, debates, and perhaps legislation gestate, we are forced to decide today a diversity case with many state and federal implications. We cannot wait for tomorrow's panacea; we cannot delay our decision. This action was originally filed in 1970 in the Chancery Court of the First Judicial District of Hinds County, Mississippi and removed, under the provisions of 28 U.S.C. § 1441,[1] to the United States District Court for the Southern District of Mississippi. Plaintiff-appellant, Mrs. Nancy K. Steele, sought to obtain jurisdiction over defendant-appellee, G. D. Searle & Co., both by personal service on an employee of appellee resident in Mississippi[2] and by the attachment of debts owed appellee by companies doing business in Mississippi[3]. The district

---

1. Section 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

2. Personal jurisdiction was sought on the assumption that defendant was "doing business" in Mississippi within the meaning of Miss.Code §§ 1437, 5309–230 and 5346 (1942).

3. Jurisdiction through attachment was founded on the provisions of Miss.Code § 2729 (1942):

The chancery court shall have jurisdiction of attachment suits based upon de-

court dismissed the complaint holding that the state laws did not permit the assertion of jurisdiction over appellee on either basis, and that Mississippi *could* not, consistent with the Due Process Clause, exercise jurisdiction over appellee on the facts of this case. Plaintiff appeals only from the holding that valid jurisdiction was not obtained under the Mississippi attachment statutes, Miss. Code §§ 2729, 2733 (1942).[4] Finding that the law of Mississippi authorizes and the Constitution of the United States permits application of the jurisdictional device of attachment on the facts of this case, we reverse.

## I. THE RECORD AND HOLDING IN THE DISTRICT COURT

. Appellant, a resident of Kansas, alleges in her complaint that she purchased in her home state certain birth control pills manufactured by appellee and that, as a result of her use of appellee's inadequately tested product, she suffered a serious and debilitating stroke on February 15, 1964, for which she seeks $500,000 in damages. Appellee, a drug company with an extensive distribution network, is incorporated in Delaware and has its principle place of business in Illinois. Although appellee owns no property in Mississippi, it does maintain three full time employees in that state for the purpose of soliciting orders. In answer to interrogatories submitted by appellant, appellee stated that, although it is not licensed to do business in Mississippi, its sales in that state over the three year period prior to the filing of this action amounted to more than $800,000. At the time of the filing of the complaint in state court three drug wholesale firms indebted to appellee were present and doing business in Mississippi, one having been incorporated there. Purporting to act on the basis of Miss.Code § 2729 (1942), appellant served the wholesalers with writs of attachment, the *res* or subject of the attachment being all monies owed to appellee by the attachment defendants, some $2,458,996.17.[5] Personal service was also made on one of the soliciting agents employed by appellee in Mississippi.

After the removal of this action appellee filed consolidated motions for relief under Rule 12, Federal Rules of Civil Procedure, alleging, *inter alia*, that the court lacked jurisdiction of the person. This motion was originally denied. However, following a realignment of the district court docket and the assignment of this case to another judge, appellee renewed its motions to dismiss and met with more favorable results. The district court granted the motion, finding that (1) there was no jurisdiction under the Mississippi attachment statute and

---

mands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any non-resident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree in personam against such non-resident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.

(The attachment statute will be cited to the Mississippi Code of 1942. The Mississippi Code 1972 becomes effective November 1, 1973. Under the new codification the language of the statute will remain the same. See Miss.Code § 11–31–1 (1972).

4. Section 2733 (Miss.Code § 11–31–9 (1972)) provides for notice and the opportunity for the defendant to appear and be heard.

5. This was the amount of indebtedness admitted by the attachment defendants in their answer to writs of attachment.

Appellee offered the following breakdown of the indebtedness as of January 31, 1970: (a) Foremost-McKesson, Inc., a Maryland corporation, owed Searle $2,387,870; (b) Meyer Brothers Drug Company, a Missouri corporation, owed $55,248; and (c) the Mississippi Drug Company, a Mississippi corporation, owed $10,578.

(2) the Due Process Clause would bar any attempt by Mississippi to exercise such jurisdiction. Specifically, the district court found that although the Mississippi attachment statute did permit the assertion of jurisdiction through attachment of a debt and appellant had complied with all of the technical requirements of state law, the court lacked jurisdiction because:

"The obvious intention of the statutes is to afford security to a claimant against an absent or absconding debtor, a status which would presuppose that the resident was a former resident of the state who had removed himself from the process of the state courts. That is not the case here where defendant has never been a resident of the state."

The court below also found that the Mississippi law permitting attachment for jurisdiction purposes was not meant to apply to a case such as this, in which the state's only "interest" in the litigation would be jurisdictional, since appellant resorted to the Mississippi procedures "purely for the purpose of availing herself of this state's longer statutory period of limitations for her tort claim." [6] The court further held that the heavy burden of defending an action on the basis of an out of state attachment could not be imposed, consistent with fair and just procedures and the applicable decisions of the United States Supreme Court, without a "substantial state interest" in the outcome of the controversy. The district court found an insufficient interest in this case, which involves a suit between a non-resident plaintiff and a non-resident defendant on a cause of action arising out of state, and therefore dismissed appellant's complaint.[7]

The jurisdiction of a federal district court in a case removed from the state courts is derivative. It depends largely for its validity on whether the state court had jurisdiction, both as a matter of state and federal law. This rule is applicable even though as an original matter the suit could have been brought in federal court without impediment. Lambert Run Coal Co. v. Baltimore and Ohio R. Co., 1922, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671. The district court in this case had only that juridition conferred by the laws of Mississippi on the Chancery Court of Hinds County, no more and no less [8]. By the same token, if the Due Process Clause of the Fourteenth Amendment prevents Mississippi from obtaining jurisdiction, a federal court is likewise without power to proceed on removal.

## II. THE MISSISSIPPI LAW

At first blush the holding of the court below in interpreting the Mississippi chancery statute would appear to be at odds with the plain meaning of the words. Section 2729 is set out in its entirety in Footnote 3, supra, but a few of its aspects merit special consideration.

6. The applicable Kansas statute of limitations for such claims provides a two year period in which to bring suit. Mississippi allows six years in personal injury cases.

7. Appellee also argued below that the entire process of prejudgment attachment without prior notice and opportunity to be heard would be violative of the precepts of due process elaborated in Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 and Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. The district court found it unnecessary to reach that question and it has not been raised on appeal. It is, of course, always open to appellee to raise the matter on remand.

8. *Lambert Run* provides that the federal jurisdiction cannot obtain in the absence of valid prior state jurisdiction, but it is Rule 64 of the Federal Rules of Civil Procedure that has long permitted federal district courts to hear such cases at all, by authorizing the federal courts to hear removed cases founded on attachment. It was only in 1963 that the Rules were amended to permit original federal jurisdiction on the basis of attachment, the so called *in rem* and *quasi in rem* jurisdiction of the federal courts. *See* F.R. C.P. 4(e)(2).

The district court stated that the clear purpose of the statute is to deal with potential defendants who have at one time resided in Mississippi but are "absent or absconding" at the time of attachment, and that the provision was not intended to reach individuals or businesses that had never "resided" in the state. The statute, however, specifically includes *non-residents* in the class subject to jurisdiction on the basis of attachment; and it appears to view them as a group distinct from once and future residents.

> "The chancery court shall have jurisdiction of attachment suits . . . against any non-resident, absent or absconding debtor,[9] who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor."

■ Although it would be difficult to imagine statutory language more closely embracing the case at bar, faced only with the Mississippi Code and the facts of this case, we would hesitate to reverse the interpretation offered by the district judge, a lawyer of extensive practice in the State of Mississippi. However, not even our justified deference to the conclusions of the district court can be permitted to obscure the explicit command of Erie R.R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, that the authoritative legislative and judicial tribunals of the states are the ultimate instructors of the federal courts on matters of state law[10].

■ We must be guided by the decision of the Mississippi Supreme Court in Alabama, Tennessee & Northern R. Co. v. Howell, 1962, 244 Miss. 157, 141 So.2d 242, which held that jurisdiction could be obtained through attachment on the basis of facts nearly identical to those presented by this appeal. In *Howell*, the plaintiff, a resident of Alabama, brought suit in Mississippi against the defendant railroad, incorporated and doing business only in Alabama, to recover for injuries suffered in a railroad crossing accident in Alabama. Howell attempted to obtain jurisdiction by means of personal service on an employee of the defendant, resident in Mississippi, and through the attachment of debts owed the defendant by another railroad doing business in Mississippi. As in this case, the litigation involved an individual, non-resident plaintiff seeking recovery in tort against a corporate non-resident defendant, owning no property and found not to be doing business in Mississippi. Like the case before us, *Howell* involved allegedly tortious conduct that did not take place in Mississippi and apparently had no connection with it. The Mississippi Supreme Court held,

> "In the case at bar, we hold that an action *in rem* is maintainable against the appellant, A.T. & N.R.R. Company, if process is completed by publication, but that since appellant is not doing business in this State no personal judgment can be rendered against it in this suit unless it enters its appearance." 141 So.2d at 246.

Since the district court has found and appellee admits that the technical requirements of notice have been complied with, *Howell* would appear to be controlling on the question of state law.

The opinion of the district court suggests one possible basis on which to distinguish *Howell*—the appellant's reason for choosing Mississippi as a forum.[11] But at no point in *Howell* does the state supreme court allude to the plaintiff's motive in coming to Mississippi to initiate his action. This is true in spite of

---

9. The statute provides that the defendant's debtor status may, as is alleged here, arise equitably from the commission of a wrong causing plaintiff injury (ex delicto).

10. Indeed the notion that state court decisions interpreting state statutes are binding on federal courts in diversity decisions was accepted long before *Erie*. See Green v. Neal's Lessee, 1832, 6 Pet. 291, 8 L.Ed. 402.

11. In this case, the reason is clearly Mississippi's six year statute of limitations.

the fact that the rather extraordinary situation in that case [12] would have made it the natural vehicle for an examination of whether the plaintiff was engaging in prohibited forum shopping. This court cannot, consistent with *Erie*, add an interpretive gloss to the Mississippi chancery statute when that state's highest court has so recently declined to do so.

On occasion federal courts might justifiably have complained that the combination of *Erie* and the paucity of relevant state precedents has turned the disposition of diversity cases into a kind of judicial mind reading exercise [13]. That is not true here. Our *Erie* guess is truly an educated one. We are not in the quandry of the philosopher who defined his task as searching in vain for a black cat in a dark room. This court has no right to expect any more explicit direction from the State of Mississippi in deciding this case than that offered by the opinion in *Howell*. We must conclude that, faced with the facts of the case at bar, the Mississippi Supreme Court would find the provisions of the attachment statute applicable.

### III. THE DUE PROCESS CLAUSE

Unfortunately the relatively recent and clear authority of the Mississippi Supreme Court on the issues of state law is not matched by equal federal precision on the constitutional question involved here. The path of United States Supreme Court decisions on the limits of state court jurisdiction has been neither straight nor narrow, and it will be necessary for us to travel this winding road with great care.

The substance and tone of federal decisions on state court jurisdiction through most of this century were set by the decision of the Supreme Court in Pennoyer v. Neff, 1877, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, a case involving a dispute over title to land in Oregon. Neff claimed the tract under a patent of the United States. Pennoyer had purchased the property at a sheriff's sale, conducted pursuant to the execution of a state court judgment obtained against Neff by a creditor, Mitchell. The disposition of the case depended on whether the Oregon state court had validly obtained jurisdiction over Neff in the earlier action. In the process of answering that question, the Court laid down the constitutional parameters of state court jurisdiction. The foundation of its opinion was the notion of territoriality: when acting upon persons or property within its borders the state may, consistent with due process, adjudicate rights and determine obligations. However, the Constitution was thought to create a bright and unmistakable barrier to the exercise of power beyond the state border. Any attempt to exercise such extraterritorial power was thought to be prohibited by the Fourteenth Amendment.

"Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them." 95 U.S. at 727.

Consequently, the Court held that *in personam* jurisdiction over Neff, i. e., jurisdiction over his person, the power to adjudicate the claims against him, up to any sum, and to create an absolute bar to further litigation of liability, could not have been obtained in the initial action, since Neff had not been

---

12. As far as appears from the *Howell* opinion, every conceivable aspect of the case was related only to one state, Alabama. Yet the plaintiff sought recovery across the border in Mississippi.

13. *See, e. g.*, Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; King v. Order of United Commercial Travellers, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608.

physically present in Oregon[14]. However, the Court also noted that it *would* have been possible to obtain jurisdiction to litigate the Mitchell-Neff controversy by attaching, prior to the initial action, any property held by the defendant in Oregon.[15] By thus achieving jurisdiction over the defendant's Oregon property, the state court could enter a binding judgment up to the value of that property. This is *in rem* jurisdiction. For the cases like that discussed in *Pennoyer*, where the *res* attached has no direct relation to the matter under litigation and is only meant to provide a handle for jurisdiction and a fund for execution, the legal profession has coined one of its least enchanging phrases, such jurisdiction being referred to as *quasi in rem*.[16]

The property under consideration in *Pennoyer* was a piece of land, but a quarter of a century after that decision the Supreme Court addressed itself to the possibility of obtaining *quasi in rem* jurisdiction through the attachment of intangible assets. On the basis of facts bearing considerable resemblance to the case at bar, the Court upheld such a jurisdictional device in Harris v. Balk, 1905, 198 U.S. 215, 25 S.Ct. 625, 49 L. Ed. 1023. The Court held that a state court judgment rendered against a nonresident defendant, with jurisdiction founded on the garnishment of a debt owed that defendant by an individual temporarily within the state was entitled to full faith and credit in subsequent litigation between the defendant and the garnishee, since the state court had obtained constitutionally recognized juris-

diction. The Court located the debt with the debtor for purposes of asserting territorial authority; and, therefore, personal service on the debtor was sufficient to give the state the power to adjudicate any claim against the creditor up to the amount of the debt. This was true even though the transaction giving rise to the garnished obligation had no connection with the attaching state. The Court held that:

> "Attachment is the creature of the local law . . . If there be a law of the state providing for the attachment of the debt, then, if the garnishee be found in that state, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff, and condemn it, provided the garnishee could himself be sued by his creditor in that state."

198 U.S. at 222, 25 S.Ct. at 626.[17]

Appellee attempts to distinguish *Harris* on the ground that the plaintiff in the challenged original action under scrutiny in that case, the person in the position analogous to that of appellant here, was himself a resident of the state whose law authorized the attachment. It is appellee's contention that this connection of the plaintiff with the forum state was *the* crucial factor tipping the finding in *Harris*. With that proposition we must disagree. While there is language in *Pennoyer* that might have led to a conclusion that the validity of all *in rem* jurisdiction is dependent on the plaintiff's residence in the attaching or

14. This concept of physical presence was subsequently expanded to permit personal service outside the state of residence on a temporarily absent domiciliary. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278.

15. The Court denied full faith and credit to the original judgment because the attachment had been made after the judgment against Neff. 95 U.S. at 733–734. Generally, as in the instant case, the process of attachment amounts to no

more than the filing with the court, the issuance of writs to the garnishees, and the publication of notice to the defendant.

16. *See generally* Developments in the Law-State Court Jurisdiction, 73 Harv. L.Rev. 909 (1960).

17. It is clear in the instant case that the courts of Mississippi would be open to suits by Searle seeking recovery of the debts that have been attached. Appellee does not contend otherwise.

garnishing state [18], this broad judicial hint was never developed into a controlling principle. A reading of the opinions in both *Pennoyer* and *Harris* leads inexorably to the conclusion that the Court was concerned not with subtle questions of the forum state's "interest" in the litigation, but with matters of territorial power and the situs of an intangible asset. Indeed the question urged upon us as essential to the disposition of this case was never expressly or impliedly relied on by the Court in *Harris*.[19] The Supreme Court explicitly disavowed any such restriction on the *Pennoyer* line of cases in Ownbey v. Morgan, 1921, 256 U.S. 94, 109, 41 S.Ct. 433, 437, 65 L.Ed. 837, stating:

> "In Pennoyer v. Neff, it was shown that the process of foreign attachment has its fundamental basis in the exclusive jurisdiction and sovereignty of each state over persons and property within its borders; and although emphasis was there laid upon the authority and duty of a state to protect its own citizens in their claims against nonresident owners of property situate within the state, it is clear that, by virtue of the "privileges and immunities" clause of section 2 of article 4 of the Constitution, each state is at liberty, if not under a duty, to accord the same privilege of protection to creditors who are citizens of other states that it accords to its own citizens."

Were this 1905, or even 1945, the appellee's constitutional objections to the Mississippi chancery procedure would have been fully answered at this point. Over the last thirty years, however, a veritable army of courts and commentators have besieged the citadel of territorial jurisdiction. The old territorial standards have been castigated as at once too restrictive and too permissive, preventing states from obtaining jurisdiction in cases in which they had substantial "interest," while permitting the exercise of authority by states that were virtual strangers to both the parties and the claim.[20] The inflexible rules of the *Pennoyer* era have been loosened, primarily in order to permit the expansion of the scope of state jurisdiction. In its historic opinion in International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Supreme Court rejected decades of precedent basing *in personam* jurisdiction over corporations on the fiction of corporate "presence,"[21] and called for a standard that looks less toward territorial power and more toward the convenience of the parties.

> "Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his

---

18. "So the State, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them. . . Every state owes protection to its own citizens; and, when non-residents deal with them, it is a legitimate and just exercise of authority to hold . . . any property owned by such non-residents to satisfy the claims of its citizens."
Pennoyer v. Neff, 95 U.S. 714, 723.

19. Indeed, the opinion in *Harris* noted the extent to which the courts of each state are open for the adjudication of the claims of non-residents. 198 U.S. at 223–224, 25 S.Ct. 625. Though not directed explicitly to the matter of *in rem* jurisdiction, the Court's language supports the proposition that *Harris* was

concerned with territorial power and not with the nature of the parties.

20. *See, e. g.*, von Mehren & Trautman, Jurisdiction to Adjudicate, 79 Harv.L. Rev. 1121 (1966); Comment, Garnishment of Intangibles, 67 Col.L.Rev. 550 (1967); Developments in the Law-State Court Jurisdiction, 73 Harv.L.Rev. 909 (1960).

21. The problem of identifying corporate presence had concerned the Court in many jurisdictional decisions in the early decades of this century. *See, e. g.*, Davis v. Farmers' Cooperative Equity Co., 1923, 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996; People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Simon v. Southern Ry. Co., 1915, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492.

presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff. . . . But now . . . due process requires only that . . . he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

326 U.S. at 316, 66 S.Ct. at 158.

*International Shoe* laid the foundation for the massive structure of long-arm statutes that have transformed the jurisdictional landscape.[22] Now appellee urges us to apply this flexible standard developed to increase the scope of jurisdiction *in personam* to the present *in rem* proceeding. Appellee contends that a resort to the doctrine of *International Shoe* will defeat Mississippi's attempt to assert jurisdiction here over a non-resident defendant on behalf of a non-resident plaintiff on a cause of action arising outside the state, since Mississippi lacks the "minimum contacts" with the litigation necessary to justify an assertion of power over the defendant. In short, appellee urges us to assimilate *in rem* and *in personam* actions for the purpose of judging the constitutionality of a state exercise of jurisdiction.

Appellee cannot, of course, be subjected to suit in Mississippi if it would violate justice and fair play, regardless of the name given the particular type of jurisdiction. However, it is one thing to say that the standard of substantial justice propounded in *International Shoe* remains applicable regardless of the legal technicalities involved in a given case; it is quite another matter to contend that those technicalities have no bearing on the underlying constitutional issue. The crucial question before us is the extent to which we are free to say that the application of these hoary rules of *in rem* jurisdiction is violative of substantial justice. For despite earlier hints to the contrary[23], the Supreme Court clearly indicated in its opinion in Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, that much still remains of both the old notions of territoriality and the ancient distinction between *in rem* and *in personam* actions when judgments are being made on the constitutional validity of state process.

"Founded on physical power . . . the *in rem* jurisdiction of a state court is limited by the extent of its power and by the coordinate authority of sister States. The basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State."

357 U.S. at 246, 78 S.Ct. at 1236.

While emphasizing that the assignment of a location to intangibles can raise difficult problems[24], the Court rec-

22. *See* McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Dawkins v. White Products Corp., 5 Cir. 1971, 443 F.2d 589.

23. Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 312, 70 S.Ct. 652, 94 L.Ed. 865.

24. Debts represent perhaps the easiest intangible assets to locate so long as the federal rule established in *Harris* remains—that a debt travels with the debtor and can be attached, pursuant to state law, wherever the debtor is subject to *in personam* jurisdiction. Menendez v. Faber, Coe & Gregg, Inc., 345 F.Supp. 527 (S.D.N.Y.1972).

It has been pointed out that the Supreme Court has never expressly extend-

ed the rule of *Harris* to include garnishment of corporate debtors. 4 *Wright and Miller, Federal Practice and Procedure* 278, n. 43. There is no basis in the cases, however, for a blanket immunity, protecting all those who are creditors of corporations from *quasi in rem* jurisdiction. The potential for injustice is, of course, obvious. While individual garnishees can usually be personally served only where they are actually found or where they reside, many large corporate garnishees are available for personal service in a score of states or more. This problem can be dealt with in light of present law through the case by case application of the flexible standards of fairness urged by appellee, or through a refinement of the notions of the

ognized that intangible assets are subject to the *in rem* and *quasi in rem* jurisdictions of the state courts. 357 U.S. at 247, 78 S.Ct. 1228.

Although the Supreme Court has not had occasion since *Harris* to reconsider the specific question of *quasi in rem* jurisdiction based on the attachment of a debt, the continued vitality of that decision was examined and accepted by the Second Circuit Court of Appeals, en banc, in Minichiello v. Rosenberg, 2 Cir. 1968, 410 F.2d 106. *Minichiello* was a constitutional challenge to the state judiciary's interpretation of a New York statute as authorizing *quasi in rem* jurisdiction in automobile accident cases through the "attachment of the defendants' interest in liability insurance policies issued by companies doing business in New York, CPLR §§ 5201, 6202." 410 F.2d at 107. Addressing itself to the very question raised here, the constitutionality under the Due Process Clause of the exercise of such attachment jurisdiction, the Second Circuit dismissed the argument, contending:

"Appellants complain we did not adequately focus on the burden to a non-

situs of a debt in order to exclude from garnishment sums owed by multi-state corporations on transactions having no connection with the forum. Even under the most restricted notions of situs, however, attachment jurisdiction would be permissible here, since a portion of the monies owed to appellee by residents of Mississippi does relate to transactions conducted in Mississippi.

25. The Second Circuit in its decision in *Minichiello* placed considerable emphasis on the fact that the plaintiff was a resident of the forum state, the very point urged upon us by appellee as controlling here. However, the plaintiff's residence was treated by the Court in *Minichiello* as significant in relation to the constitutionality of imposing New York law on the contractual obligation of the insurance company-garnishee to defend the suit. In analyzing this application of New York state law to an out of state contract, the Second Circuit turned to Watson v. Employers Liability Assurance Corp., 1954, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 in which the Supreme Court had upheld a similar imposition of the law of Louisiana on foreign insurance

resident of having to defend a personal-injury action in another state, conceivably far from his domicile and the place of the accident, simply because his liability insurer has chosen to do business there.

■ "We find this argument unpersuasive so long as Harris v. Balk . . . stands." 410 F.2d at 117–18.[25]

■ In light of both *Harris* and *Hanson* this court cannot say that the presence of a potential defendant's debtor within a state is either irrelevant or insignificant in determining the fairness of subjecting the defendant to the process and tribunals of that state. Indeed, the presence of a *res*, tangible or otherwise, within the jurisdiction represents a crucial point of contact. It goes far toward providing the essential "minimum" necessary for the constitutional assumption of jurisdiction.

We are not unmindful of the fact that chancery proceedings like the one considered here appear as harsh reminders of an earlier era. Even granting the availability of the doctrine of forum non conveniens as an assuaging tool in these

contracts. In *Watson* the fact of some physical connection with the forum was considered crucial for the application of Louisiana law to overturn contract provisions entered into out of state.

The Supreme Court has made it clear that the questions of state power to exercise jurisdiction over a dispute and state authority to apply its own substantive law to the resolution of that controversy are distinct. While it is true that no forum can apply *any* law until it has valid jurisdiction, a state *with jurisdiction* can be constitutionally precluded by the Due Process and Full Faith and Credit Clauses from applying its own law if it lacks sufficient contact with the parties or the event giving rise to the litigation. *See, e. g.*, Home Ins. Co. v. Dick, 1930, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926; Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 1934, 292 U.S. 143, 54 S.Ct. 634, 78 L. Ed. 1178.

It was the Second Circuit's emphasis on the choice of law aspect of *Minichiello* that led to rehearing en banc on the broader due process issue and a holding squarely resting on Harris v. Balk.

instances, were we faced today with a case like the Harris v. Balk of old, in which a defendant's debtor wanders across a border line and thereby subjects the defendant to the process of a strange and distant state, the tendency to call a halt would be strong. However, we are not here presented with the Case of the Peripatetic Debtor. Appellee can hardly claim to be a stranger to Mississippi or its laws. It has regularly dealt with companies incorporated or licensed to do business in Mississippi. In the course of these transactions Searle both expected and received the protection of Mississippi law. The prospect of having to defend a suit in that state, albeit on a foreign cause of action, cannot fairly be seen as a rude and unbelievable shock to a company that maintains employees and ships several hundred thousand dollars worth of merchandise into Mississippi each year[26]. In the horse and buggy days distance was a meaningful menace. Today we approach the speed of light, and corporations avail themselves of all the modern aspects of living. In our mobile society corporations cannot feel alien where their commercial interests magnetize them.

This court does not sit to comment on the wisest or most intellectually coherent system of state court jurisdiction. The contours and implications of corporate peregrinations are not to be drawn by federal courts. Within constitutional limits the states must be permitted to use their own transits in surveying jurisdiction. We sit only to measure state action against the constitutional parameters and to prohibit those assertions of jurisdiction that exceed the farthest reach of constitutional authority. On the facts of this case, we cannot say that Mississippi has gone too far in calling appellee to account in its courts. Intangible property is present in the state, appellee is not a stranger to the jurisdiction forced into litigation through the wanderings of a stray debtor, and the applicable state law clearly provides both actual notice and opportunity to be heard[27] Under these circumstances the exercise of state court jurisdiction, and hence federal jurisdiction on removal, is not violative of either the principles of fairness[28] or territoriality[29] mandated by the Fourteenth Amendment.

### CONCLUSION

Finding that appellant's cause of action has cleared both the state and federal hurdles set up in the district court, we reverse.

Reversed and remanded.

26. An examination of the opinion of the district court and the arguments made on this appeal indicates that the real concern of appellee is not with the unfairness of having to appear in the courts of Mississippi, but rather with the application of the law of that state, specifically the rather lengthy Mississippi period of limitations. Appellee seems to assume that a decision on the jurisdictional question is dispositive on the matter of choice of law. While a policy of permitting a state to take jurisdiction only over those controversies to which it can justifiably apply its own substantive law has been much bruited about by the commentators, *compare* Ehrenzweig, The Transient Rule of Personal Jurisdiction, 65 Yale L.J. 289, 292 (1956) *with* von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1128–33 (1966), the Supreme Court has not accepted such a formulation. See footnote 25.

Since the question of the application of the Mississippi statute of limitations was reserved in the court below and has not been briefed on appeal, we express no opinion on either the appropriate limitations period under Mississippi choice of law rules, *see* Klaxon Co. v. Stentor Manufacturing Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; or the constitutionality of the application of Mississippi law to the facts of this case. *See* Home Ins. Co. v. Dick, 1930, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926.

27. *See* Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

28. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

29. Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.