# Farrington v. Farrington

*Virginia Funke,* for plaintiff.
*Jack Sirott,* for defendant.

GARB, *J.,* October 16, 1974—We have before us for disposition defendant's preliminary objections to plaintiff's complaint in this suit in assumpsit. The complaint alleges that plaintiff and defendant were formerly husband and wife, having been divorced on July 6, 1964. The suit is based upon a separation and property agreement entered into between the parties on February 13, 1964, which provides, inter alia, that the husband shall pay to wife for her support and maintenance the sum of $4,320 per annum in equal monthly installments of $360, each payable on or before the fifth day of every month. At the end of ten years, husband's obligation for support shall be reduced to $3,120 per

annum in equal monthly installments of $260 each. The gravamen of wife-plaintiff's cause of action is that the husband has breached the aforesaid agreement by having failed and refused to make the aforesaid payments of $360 each in the months of April, May, June, July, August, September and October of 1973.

The agreement, which is appended to the complaint and made a part thereof was entered into in Doylestown, Bucks County, Pa., at a time when both plaintiff and defendant were residents of this county. At the time of filing of the complaint, the wife-plaintiff continued to be a resident of Bucks County, Pa., but the complaint alleges that defendant is a resident of the State of New Jersey. The primary preliminary objection upon which defendant relies is a petition raising the question of lack of jurisdiction on the grounds that the court had no jurisdiction over the defendant-husband.

Service of the complaint was made upon defendant by service upon the Department of State of the Commonwealth of Pennsylvania by certified mail, postage prepaid, of a true and attested copy of the complaint and directly upon defendant by certified mail, postage prepaid, of a true and attested copy of the complaint under and pursuant to the provisions of section 8301 of the Act of November 15, 1972, P.L. 1063 (No. 271), 42 Pa. C. S. §8301, et seq., and it is based upon this Act of assembly that plaintiff claims jurisdiction over the person of defendant. It is the contention of plaintiff that this court has jurisdiction over defendant by virtue of section 8305, 42 Pa. C. S. 8305, of the foregoing Act of Assembly which provides, in relevant part, as follows:

"Any non-resident of this Commonwealth who, acting outside of this Commonwealth, individually,

under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process in any civil action or proceeding instituted in the Courts of this Commonwealth arising out of or by reason of any such conduct. Service of process in any such civil action or proceeding shall be effected through the Department of State as provided in this chapter."

The operative words of this section which cause difficulty in the context in which it is applied herein are the words "acting outside of this Commonwealth, . . . shall have caused any harm within this Commonwealth." Neither counsel have furnished, nor have we found, any authority construing the words "any harm within this Commonwealth" for purposes of the application of this statute. Some indication of the thrust of this clause can be gleaned by negative inference from two other sections of the statute itself. Section 8303 provides for jurisdiction within this Commonwealth where any nonresident shall have committed a tortious act within this Commonwealth, and section 8304 provides for jurisdiction within this Commonwealth where any nonresident of the Commonwealth shall have done any business within this Commonwealth. Therefore, these two sections provide for jurisdiction under this long-arm statute within the Commonwealth where a tortious act has been committed within the Commonwealth by a nonresident or where a cause of action arises within the Commonwealth by virtue of a nonresident doing business herein. It is clear that neither of these sections apply to the case before us and, therefore, if jurisdiction is to be founded upon this statute, it

can be founded only upon the application of section 8305.

Before addressing ourselves to the question of whether the language of section 8305 is sufficiently broad to encompass the cause of action at issue before us, there is a constitutional question of serious import raised by neither counsel herein. We refer, of course, to the question of whether it would be a violation of defendant's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution for us to assume jurisdiction over him. We are constrained by the provisions of section 3 of the Statutory Construction Act of December 6, 1972, P. L. 1339 (No. 290), 1 Pa. C. S. §1501, et seq., and specifically section 3 thereof, 1 Pa. C. S. §1922 to construe the act, if possible, in a constitutional way. See Commonwealth v. McCoy, 405 Pa. 23 (1961), construing the forerunner to the present Statutory Construction Act in exactly the same language in section 52 of the Act of May 28, 1937, P. L. 1019, art. IV, 46 P. S. §552.

It was held in the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1877), that since the adoption of the Fourteenth Amendment to the United States Constitution, no State can exercise direct jurisdiction and authority over persons or property without its territory. However, it is recognized that the exercise of jurisdiction which every State is admitted to possess over persons and property within its own territory will often affect persons and property without it. The validity of any judgment rendered by a State may be directly questioned, and its enforcement in the State resisted on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do

not constitute due process of law. As the court stated, whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude that which is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. In that context, they then mean a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution to pass upon the subject matter of the suit and if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or by his voluntary appearance.

That seemingly rigid dogma regarding a State's extra-territorial jurisdiction over the persons of nonresidents has been steadily eroded in recognition of, and response to, the changing needs of our ever-developing industrial, commercial and mobile needs. In International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95 (1945), the Supreme Court stated that, historically, the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence, his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him, citing Pennoyer v. Neff, supra. That court further stated as follows, at 326 U.S., page 316:

"But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in

order to subject defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'.":[1]

With the adoption of that considerably more enlightened doctrine, the withering away of the strict dogma of Pennoyer v. Neff, supra, has continued. In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957), the court noted that, since Pennoyer v. Neff, supra, the court has held that the due process clause of the Fourteenth Amendment places some limit on the power of State courts to enter binding judgments against persons not served with process within their boundaries. Just where this line of limitation falls has been subject to prolific controversy, particularly with respect to foreign corporations. As noted by the court in McGee v. International Life Insurance Co., supra, in a continuing process of evolution, the Supreme Court accepted and then abandoned various standards for measuring the extent of State jurisdictional powers over such corporations, such as "consent," "doing business," and "presence." The court finally recognized therein that due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Finally, in Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d, 1283 (1958), the court ac-

---

1. See Siegel v. Stahlfield, 64 D. & C. 2d 132 (1973).

knowledged that in McGee the court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, supra, to the flexible standard of International Shoe Company v. Washington, supra. However, the court in Hanson v. Denckla, supra, acknowledged that it is a mistake to assume that this trend heralds the eventual demise of all restrictions from the personal jurisdiction of State courts. Those restrictions are more than a guarantee of immunity from inconvenience or distant litigation. They are a consequence of territorial limitations over the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the "minimal contact" with that State that is a prerequisite to its exercise of power over him. The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the foreign State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws. Therefore, although the procedural or factual application of the

due process protections of the Fifth Amendment, as preserved to individuals through the application of the Fourteenth Amendment, have been relaxed substantially, the consistent constitutional rule is still that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant: Zenith Radio Corporation v. Hazeltine Research, Inc., 395 U.S. 100, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969).

Therefore, as we view the problem, it is one of balancing and weighing the constitutional right of the individual to have protected his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution as opposed to the needs and demands of our modern, mobile and litigious society. In an expansive and scholarly opinion, Judge Friendly, of the United States Court of Appeals for the Second Circuit, analyzed these considerations in Buckley v. New York Post Corporation, 373 F. 2d 175 (2d Cir., 1967). Therein, he recognized that the years which have passed since Pennoyer v. Neff, supra, have seen such widespread adoption of statutes asserting personal jurisdiction over nonresidents and so many decisions upholding their constitutionality as to seemingly obliterate the holding in Pennoyer v. Neff. Judge Friendly observed that there has been a movement away from the bias favoring the defendant in matters of personal jurisdiction toward permitting the plaintiff to insist that the defendant come to him when there is a sufficient basis for doing so. In citing McGee v. International Insurance Company, supra, Judge Friendly explains that, although that case may be so construed, it is error to determine that the due process clause imposes no bar to a State asserting personal jurisdic-

tion in favor of a person within its borders who suffers damage from the breach of a contract the defendant was to perform there. However, he states that once we free our minds from traditional thinking that the plaintiff must inevitably seek out the defendant, such a doctrine as enunciated in the foregoing Supreme Court cases decided since Pennoyer v. Neff, supra, would not seem to violate basic notions of fair play. Any view that it does must rest on an inarticulate premise, which a legislature is free to question, that plaintiffs are much more given to making unjust claims than defendants are to not paying just ones. Indeed, when the operative facts have occurred where plaintiff sues, the convenience of both parties would often be served by a trial there, and the chief benefit to defendant of a rule requiring a plaintiff to seek him out is the impediment this creates to the bringing of any suit at all. Unfairness inconsistent with notions of fair play occurs only when a defendant is compelled to defend himself in a court of a State with which he has no relevant connection. Judge Friendly goes on to state, at 373 F. 2d, page 181:

". . . and *inflicting harm* within a state would appear to meet whatever further constitutional requirements may arise from 'territorial limitations on the power of the respective states." (Emphasis supplied.)

Judge Friendly concludes by stating that he would perceive of no constitutional problem in a State summoning a nonresident to answer in its courts for a tort, at least, alleged to have been committed in the foreign State upon a resident of that state even if that had been a wholly isolated event. See also Steele v. G.D. Searle and Co., 483 F. 2d 339 (5th Cir., 1973).

Against the backdrop of what we now perceive to

be the constitutional requirements, we are satisfied that there is no constitutional impediment to our assuming jurisdiction over defendant in the case now before us. The question is no longer decided simply by determining that jurisdiction over a defendant can be assumed only within the jurisdiction where he is to be found. We can perceive of no particular degree or elements of unfairness in requiring defendant to defend this action in this jurisdiction. We are satisfied that there are sufficient contacts between defendant and his conduct and this jurisdiction to warrant our assumption of jurisdiction. The harm of which plaintiff complains is defendant's failure to make the payments under the contract and surely it can be argued that this harm occurred in this Commonwealth and in this court's jurisdiction where plaintiff resides and where plaintiff was to receive the payments. The contract was entered into in this jurisdiction at a time when both parties were resident here and the contract itself was executed here. In addition to the particular clause upon which plaintiff sues, the contract provides for the distribution of personal property at that time situate within the Commonwealth as well as the conveyance by defendant to plaintiff of certain real estate located within this jurisdiction as well as the execution by plaintiff of a mortgage upon that same real estate. The contract provides for the relinquishment by each party of his and her inchoate intestate rights presumably under and pursuant to the laws of this Commonwealth. We are satisfied that these are sufficient contacts upon which to justify our assumption of jurisdiction.

VanWagenberg v. VanWagenberg, 215 A. 2d 812 (Md., 1966) is a case strikingly similar to the one

before us. There, the question at issue was the jurisdiction of the State of New York, the residence of wife-plaintiff, over the nonresident husband for his failure to make payments for the support of his children under and pursuant to his separation agreement. There, the Maryland court held that the State of New York had sufficient contacts to assume jurisdiction and held that the judgment entered by the State of New York was valid and binding in the State of Maryland. Although that case may be somewhat distinguishable on its facts we do not believe significantly so. The distinguishing features between that case and the one before us are, in that case the support was for children rather than just for a divorced wife, a matter which the State has a direct interest; and, further, the husband had established a trust fund in the State of New York with a New York trustee to secure his faithful compliance with the order. The distinction we see is that, in that case, there were more and perhaps more compelling contacts than in the case before us. Nonetheless, as heretofore stated, we are satisfied that the contacts in the matter before us are sufficient and that basic fairness does not dictate that we abjure jurisdiction.

We are satisfied, by virtue of the foregoing, that a construction of this statute before us in this manner is a constitutional one and, therefore, would constitute no violation of defendant's due process rights. We are likewise satisfied that the language of the statute is sufficiently broad to encompass the cause of action before us. It is obvious that the legislature intended by this particular section to include jurisdiction over some sort of cause of action. By the two other sections heretofore cited, the legislature has provided for jurisdiction over tortious actions and

injury caused by doing business by nonresidents. Therefore, we are satisfied that the section now before us does include harm caused by virtue of breach of contract and it is a cause of action based upon a breach of contract with which we are confronted. Therefore, we determine that this court has jurisdiction and the preliminary objection raising a question of jurisdiction must be denied.

Defendant's second preliminary objection is in the nature of a motion to strike off a pleading for lack of conformity to law or rule of court. Essentially, this preliminary objection pleads that the copy of the complaint served upon defendant did not bear a court, term or number, nor did it contain a copy of the agreement, exhibit A, which was, in fact, appended to the original filed in the office of the prothonotary. It is obvious that defendant is now aware of the court, term and number because his preliminary objections were filed under that number. While, technically, the copy of the agreement should have been appended to the copy of the complaint served upon defendant, we are satisfied that if he does not have a copy he can secure same by the process of discovery.

The last matter complained about by defendant is that the complaint prays for attorney's fees where there is no authority for attorney's fees in an action in assumpsit. We will refrain from disposing of this particular objection at this time as it is a matter that can be disposed of at the appropriate time when the merits of the case have been addressed.

For the foregoing reasons, defendant's preliminary objections are hereby denied, dismissed and overruled, and we hereby enter the following.

## ORDER

And now, October 16, 1974, it is hereby ordered, directed and decreed that defendant's preliminary objections are denied, dismissed and overruled with leave to defendant to file an answer to the complaint within 20 days of the date hereof.