MISSISSIPPI CHEMICAL CORPORATION,
Plaintiff,

v.

CHEMICAL CONSTRUCTION CORPORATION et al., Defendants.

Civ. A. No. J75–275(N).

United States District Court,
S. D. Mississippi,
Jackson Division.

Nov. 22, 1977.

Joe H. Daniel, John M. Roach, Jackson, Miss., Hollaman M. Raney, Yazoo City, Miss., for plaintiff Mississippi Chemical Corp.

Thomas M. Murphree, Jr., Watkins & Eager, Jackson, Miss., for intervenors Protection Mutual Ins. Co. and Appalachian Ins. Co.

Daniel J. Brooks, Frederick E. Sherman, Layton and Sherman, New York, N. Y., Jimmie B. Reynolds, Jr., Jackson, Miss., for defendants Chemical Construction Corp., Aerojet-General Corp., Duane E. Bush.

Louis G. Baine, Jr., Jackson Miss., B. L. Riddick, Jackson, Miss., for defendant Willhoit Steel Erectors & Rental Services, Inc.

George F. Woodliff, Jackson, Miss., for defendant Marsh & McLennan, Inc.

Joe W. Hobbs, Jackson, Miss., for defendant Hartford Accident & Indemnity Co.

George E. Woodliff, III, Jackson, Miss., for defendant Brown & Root, Inc.,

Junior O'Mara, Kenneth W. Barton, Jackson, Miss., for defendant Continental Casualty Co.

L. Arnold Pyle, Ross F. Bass, Jr., Jackson, Miss., for defendant Airco, Inc.

W. Larry Latham, Jackson, Miss., for attachment defendant Barnard and Burk, Inc.

Timothy R. Smith, Heidelberg, Woodliff & Franks, Jackson, Miss., for attachment defendants Monsanto Co. and Monsanto Enviro-Chem Systems, Inc.

## ORDER

NIXON, District Judge.

This cause having come before the Court on Motion of the Defendant to vacate and have declared unconstitutional, or, alternatively, to reduce, chancery attachments by the Plaintiff; and upon the Plaintiff's Motion for attachment of funds at law should the Defendant's Motion relating to chancery attachments by sustained; and, after referral to the United States Magistrate by the United States District Judge, a Recommendation having been filed in this matter by the United States Magistrate recommending that the attachments secured by the Plaintiff under the Mississippi Attachment in Chancery statutes are unconstitutional and therefore should be vacated in their entirety; that the alternative Motion of the Plaintiff Mississippi Chemical to substitute the attachment at law procedure for the chancery attachment procedure should be denied because of the constitutional infirmities in the Mississippi Attachment at Law statutes; that all attachments imposed upon the indebtedness of non-Mississippi corporations to the Defendant as a result of transactions having no connection with the State of Mississippi should be vacated and not subsequently authorized; and the Court having considered the objections filed by the Plaintiff Mississippi Chemical Corporation and finding them to be without merit, it is the opinion of the Court that the Recommendation of the United States Magistrate should be adopted by this Court.

IT IS THEREFORE ORDERED that the Report and Recommendation of the United States Magistrate be, and the same is hereby, incorporated herein by reference and adopted as the Opinion of this Court, the Defendant's Motion is granted in accordance therewith, and the Plaintiff's Motion is hereby denied.

ORDERED, this the 22nd day of November, 1977.

## RECOMMENDATION

JOHN M. ROPER, Magistrate.

This action is before the Court on motion of the Defendant, Chemical Construction Corporation (hereinafter Chemico), to vacate and have declared unconstitutional, or, alternatively, to reduce, chancery attachments by the Plaintiff, Mississippi Chemical Corporation (hereinafter Mississippi Chemical). Mississippi Chemical has moved alternatively for attachment of funds at law should Defendant Chemico's motion relating to the chancery attachments be sustained. Chemico opposes this motion, also on constitutional grounds. This case is before the U.S. Magistrate for recommendation upon reference by the District Judge.

Mississippi Chemical sued Chemico claiming damages in excess of $25,000,000. Plaintiff utilized Mississippi's Chancery Attachment statute, § 11–31–1 et seq., Mississippi Code of 1972, made applicable to this action by Rule 64, F.R.Civ.P., to attach substantial sums owed by certain corporations to Chemico. These corporations have withheld payment of sums owed Chemico and the Defendant now seeks to vacate these attachments, or to reduce the amounts attached to those amounts owed when the attachments were filed.

Chemico contends that the procedure authorized by the Mississippi Attachment in Chancery statutes, on its face and as applied in this action, violates due process by failing to afford the principal defendant notice or opportunity for a hearing and by failing to provide any other safeguards reasonably calculated to prevent an erroneous, arbitrary, and oppressive *ex parte* deprivation of property.

The Defendant further contends the statutes are violative of due process as applied in this case because they permit prejudgment attachment of debts owing to Chemico by other non-Mississippi corporations which are the result of transactions having absolutely no connection with the State of Mississippi.

## NECESSITY OF A THREE–JUDGE COURT

The first question presented is whether it is necessary to request a three-judge court be convened in order to consider the matters before the Court. The law applicable is 28 U.S.C. § 2281.[1] The three-judge court amendments,[2] adopted August 12, 1976, presumably would not affect this Court's consideration of the constitutionality of the Mississippi attachment processes and the necessity of convening a three-judge court. Section 7 of the Act (28 U.S.C. § 2284) provides that the Act "shall not apply to any action commenced on or before the date of enactment." This provision was "added to make clear that cases filed prior to the enactment of this bill shall proceed to final disposition under the law existing on the date they were commenced." S.Rep.No.94–204, 94th Cong., 2nd Sess. 14 *reprinted in* [1976] U.S.Code & Admin.News, pp. 1988, 2001.

■■■ The convening of a three-judge court is not required when no injunction seeking to interdict the operation of a statutory scheme on a statewide basis is sought. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 154, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Flemming v. Nestor*, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Wilson v. Gooding*, 431 F.2d 855, 857–58 (5th Cir. 1970). The Mississippi Chancery Attachment statute is invoked solely by the Plaintiff's attorney, who serves the complaint upon the attachment Defendant. Thus, even if there was a request for injunctive relief against the chancery attachment procedure, this would not require the convening of a three-judge court because no state officer would be enjoined. *Hobbs v. Tom Norton Motor Company*, 373 F.Supp. 956, 958 (S.D.Fla.1974). A three-judge court could have been sought to enjoin the application of the attachment at law statutes, because state officers are vested with authority to issue writs of attachment. Chemico has not sought injunctive relief, however, but simply attacks the validity of Mississippi's attachment statutes as those statutes have, within the context of this lawsuit, been brought to bear against Chemico. Chemico was not required to seek, and has not sought, "affirmedly . . . to interdict the operation of a statutory scheme" on a statewide basis. *Wilson v. Gooding*, 431 F.2d 855, 857 (5th Cir. 1970). There is no requirement that a party seeking to avoid the application of an allegedly unconstitutional state statute request the convening of a three-judge court even where, as in the case sub judice, a declaration of the unconstitutionality of that statute is sought.

Under the circumstances of this case, this Court is of the opinion that Chemico may properly draw into question the constitutionality of the Chancery Attachment statutes and Attachment at Law statutes without calling into operation a three-judge court. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 154, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Flemming v. Nestor*, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).[3]

---

**1.** 28 U.S.C. § 2281 provides: Injunction against enforcement of State statute; three-judge court required. An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this Title.

**2.** Public Law 94–381 repealed Sections 2281 and 2282 of Title 28, U.S.Code, and amended Section 2284 of Title 28 U.S.Code.

**3.** It should be noted that the Defendant contends amended 28 U.S.C. § 2281 (see Fn. 2) is applicable to the Plaintiff's recent Motion for Attachment At Law filed August 27, 1976, after the effective date of the enactment of P.L. 94–381. Defendant argues that prior to the bringing of that motion, Chemico had no reason to mount any attack on the Attachment At Law Statutes and therefore, any action challenging on due process grounds Mississippi's Attachment At Law Statutes should be heard by a single District Judge. As heretofore noted, § 7

The Defendant, Chemical Construction Corporation, or Chemico, is a Delaware corporation having its principal place of business in a state other than Mississippi but qualified to do business and registered to do business in the State of Mississippi. Chemico was served with process through its registered agent, CT Corporation Systems, in Jackson, Mississippi, on September 30, 1975. The suit, filed by Mississippi Chemical Corporation, sought injunctive relief and damages from Chemico, who was the contractor for the erection of a nitric acid plant at Yazoo City, Mississippi, the Plaintiff alleging a breach of contract. Several other parties have subsequently been brought into this action. The case has remained somewhat inactive since December of 1976, pursuant to an agreement among the various parties which would enable the nitric acid plant in question to be completed. The plant became operative in August of 1977. It does not appear at this time that the numerous parties involved herein will be able to resolve their differences without judicial assistance, thus requiring the immediate resolution of all pending motions and the resumption of discovery in this matter. This Court has extended the discovery period in this case until December 31, 1977.

The attachment defendant, Continental Casualty Company, was served with process by service on its agent for process, the Commissioner of Insurance of the State of Mississippi, Jackson, Mississippi, on September 30, 1975. The attachment defendants Barnard & Burk, Inc., Brown & Root, Inc., Monsanto Company, and Monsanto Enviro-Chem Systems, Inc. were served with process by service upon CT Corporation System, registered agent for service of process for each of the attachment defendants, on September 30, 1975.

Continental Casualty Company has now been dropped as an attachment defendant by consent of all parties and no longer has any indebtedness to Chemico sought to be reached by Chemico's motion to vacate the chancery attachments. Monsanto Company is now indebted to Chemico in the amount of $62,025.00 as of August 30, 1977, none of which was owed at the time of the service of process in this matter. This indebtedness represents accounts receivable for work performed by Chemico for Monsanto on a chemical plant located in the State of Florida. This contract was neither negotiated within the State of Mississippi nor was it to be performed in any part within this State. Monsanto has withheld payment of the entire sum which is now due and owing to Chemico. The attachment defendant, Brown & Root, Inc., is currently indebted to the defendant in the amount of $1,108,-671.00. All but approximately $10,000 of this indebtedness became due and owing after the commencement of this action. This amount represents accounts receivable for work performed pursuant to a contract between Chemico and Brown & Root, Inc., for construction of a facility within the State of New Mexico. The contract for this facility was neither negotiated within the State of Mississippi nor was it to be performed within this state.[4]

The attachment defendant Barnard and Burk, Inc., is apparently indebted to Chemico in the amount of $1,017,760.00 as of August 30, 1977. All of this indebtedness has become due and owing to Chemico after the commencement of this action on September 30, 1975. In fact, the vast portion of the amounts now due and owing Chemico have become due and owing after the commencement of this action in late 1975, and after the presentation of this motion in late 1976, necessitating a prompt disposition of the issues now before the Court.

It is clearly established that Chemico has at no time been afforded an opportunity to test the validity of these attachments. Likewise, there was no prior notice to

---

of the Act provides that it should not apply to any *action* commenced on or before the date of the enactment. (28 U.S.C. § 2284, as amended). This Court's resolution above of the availability of single judge relief in this case obviates the necessity of a decision on this alternative ground for single judge jurisdiction.

4. The figures denoted herein are the amounts conceded to be owed by Brown & Root and Monsanto to Chemico. There are continuing discussions between the parties concerning the appropriate charges for certain invoices.

Chemico of the attachments nor has there been a hearing of any kind relating to the attachments.

The relevant Attachment in Chancery statutes are §§ 11–31–1 to 11, Mississippi Code of 1972. Section 11–31–1 grants the chancery court quasi in rem jurisdiction over a "nonresident, absent or absconding debtor" to whom an indebtedness is owed by any person within the State of Mississippi.[5]

Section 11–31–3 provides for the service of a summons and a bill of complaint, or a summons upon which the nature and object of the lawsuit is endorsed, upon the debtor who is present within the state which suffices to bind the indebtedness by him to the non-resident, absent or absconding defendant. § 11–31–3, Mississippi Code of 1972.[6]

This indebtedness, which is frozen once service is made upon the attachment defendants, is the res which provides the chancery court with quasi in rem jurisdiction over the non-resident principal defendant, to the extent of the indebtedness. The principal defendant may be made a party to

the lawsuit merely by publication of a summons. Section 11–31–9, Mississippi Code of 1972.[7]

Additionally, the chancery court may acquire in personam jurisdiction over the non-resident principal defendant if personal service is made upon him, or if he enters an appearance. Section 11–31–1, Mississippi Code of 1972. Unless the non-resident principal defendant is thus subjected to the chancery court's in personam jurisdiction, judgment may be rendered against him only to the extent of the attached indebtedness.

The obligation of the attachment defendant to the non-resident principal defendant is bound by service of process in the discretion and at the instance of the plaintiff's attorney. There is no requirement that the plaintiff obtain any court ordered writ of sequestration or garnishment. *Dunn v. Stewart*, 235 F.Supp. 955, 966 (S.D.Miss. 1964), *rev'd* on other grounds, 363 F.2d 591 (5th Cir. 1966); *Illinois Central R. Co. v. McDaniel*, 246 Miss. 600, 151 So.2d 805 (1963).

---

**5.** *§ 11–31–1. Jurisdiction; debtors.*

The chancery court shall have jurisdiction of attachment suits based on demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any non-resident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The Court shall give a decree in personam against such non-resident, absent or if he has entered an appearance.

**6.** *§ 11–31–3. How effects or indebtedness bound.*

When a bill shall be filed for an attachment of the effects of a nonresident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such nonresident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead

of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service.

**7.** *§ 11–31–9. Publication for defendant and his appearance.*

The nonresident, absent or absconding debtor shall be made a party to such suit by publication of summons as in other cases, and may appear and plead, demur or answer, to the bill without giving security; but the lien of the creditor upon the property attached shall not be affected thereby unless security be given. If such debtor appear, he may give satisfactory security for performing the decree, and thereby discharge the lien, the court, or chancellor in vacation, approving the security and making an order to that effect; but if such debtor fail to appear, or fail to give security, the court shall have power to make any necessary orders, and to require security, to restrain the defendants within this state from paying, conveying away, or secreting the debts by them owing, or the effects in their hands belonging to, the nonresident, absent or absconding defendant, and may order such debts to be paid, or such effects to be delivered to the complainant, on his giving security for the return thereof in such manner as the court may direct.

A bond is required by the plaintiff only if he seeks to execute upon a default judgment. Section 11–31–11, Mississippi Code of 1972;[8] *I. B. Rowell & Company v. Sandifer*, 129 Miss. 167, 91 So. 899 (1922). There is no requirement that the plaintiff make any showing that he is entitled to the attachment. Section 11–31–3, Mississippi Code of 1972. At no time prior to or after the issuance of the summons and bill of complaint upon the attachment defendant is there any review of the propriety of the attachment by a judicial officer.

Once the indebtedness owing to the principal defendant has thus been bound, the principal defendant can dissolve the attachment only by posting a satisfactory bond approved by the court, or chancellor in vacation. Section 11–31–9, Mississippi Code of 1972. The principal defendant cannot discharge the attachment by challenging the validity of the attachment itself, even on grounds of procedural irregularity, excessiveness, or lack of merit of the underlying claim. By prevailing at the trial on the merits, the principal defendant can obtain the release of the attached indebtedness, but he cannot recover damages, interest or attorneys' fees based on wrongful attachment unless he successfully institutes a separate action for malicious prosecution. *Burt v. Roberts*, 212 Miss. 576, 55 So.2d 164 (1951).

All debts owing to the principal defendant are subject to Attachment in Chancery regardless of where those debts arose, and provided only that the attachment defendant may be found and served within the State of Mississippi. Accordingly, debts owing as a result of contracts between nonresidents of the State of Mississippi to be performed outside of this state are attachable and may be made the basis of jurisdiction as long as the attachment defendant is amenable to service of process within the state. *Alabama, Tennessee and Northern R. Co. v. Howell*, 244 Miss. 157, 141 So.2d 242 (1962).

In the case sub judice, none of the attached funds of the remaining attachment defendants is in any way attributable to contracts to be performed in Mississippi or to debts arising in this state. Although for the purposes of acquiring quasi in rem jurisdiction over the principal defendant the indebtedness of the attached defendants to the principal defendant must be owing *in praesenti* at the time of service upon the attachment defendant, there is no clear authority as to whether the attachment in chancery operates to bind debts which arise and mature after the service on the attachment defendants. *Mid-South Paving Company v. State Highway Com'n.*, 197 Miss. 751, 777, 22 So.2d 497 (1945); *Aetna Insurance Company v. Robertson*, 126 Miss. 387, 88 So. 883, 891 (1921). In the case at bar, the Attachment in Chancery procedure has been applied to bind all debts running from the attachment defendants to Chemico, including amounts which have become due subsequent to the service upon the attachment defendants.

Accordingly, Mississippi Chemical has been able to immobilize substantial sums of money due and owing to Chemico from attachment defendants, Brown & Root, Monsanto Company and Barnard & Burk, Inc. simply by service upon the attachment defendants of summonses and complaints by the United States Marshal, at the instance of the plaintiff's attorney. Chemico had neither notice of plaintiff's intention unilaterally to invoke the Attachment in Chancery procedure nor the opportunity to contest the propriety of the attachments either before or after they were imposed. The plaintiff was not required to apply to

---

**8.** *§ 11–31–11. Complainant to give security after decree.*

 If a decree can be rendered in such case without the appearance of the absent debtor, the court, before any proceedings to satisfy said decree, shall require the complainant to give security for abiding such further orders as may be made, for restoring of the estate or effects to the absent defendant, on his appearing and answering the bill within two years; and if the complainant shall not give such security, the effects shall remain under the direction of the court, in the hands of a receiver, or otherwise, for such time, and shall then be disposed of as the court may direct.

any disinterested common neutral judicial officer in order to bind the attached sums, nor to demonstrate the probable validity of its underlying claims, nor even to make any particularized showing that attachments were needed either in order for this Court to acquire jurisdiction over Chemico or in order to prevent the removal of the attached funds from this jurisdiction. The Plaintiff was able to avail itself of the statutory machinery of Attachment in Chancery without the posting of any security, although Chemico can dissolve the attachments only by the posting of adequate security. Should the attachments ultimately be shown in this case after the trial on the merits to have been wrongfully or mistakenly issued, Chemico will have no statutory entitlement to damages, interest or attorneys' fees other than through a separate action for malicious prosecution. It is this procedure the Defendant alleges is violative of the due process guarantees of the Fifth and Fourteenth Amendments.

Initially, the Defendant contends that the Attachments in Chancery procedures under attack herein deprive Chemico of property under color of state law and must therefore be accompanied by procedural due process. This Court concurs.

The attachment herein was accomplished by an act of the United States Marshal in serving the summonses and complaints upon the attachment defendants pursuant to Rule 4 and 64 of the Federal Rules of Civil Procedure. The act of a process server, particularly a government official, standing alone, can constitute state action sufficient to invoke the applicability of due process requirements. *See United States v. Wiseman*, 445 F.2d 792 (2nd Cir. 1971); *Carrasco v. Klein*, 381 F.Supp. 782 (E.D.N.Y.1974).

Moreover, it is well settled that the actions of a private citizen who is vested by state law with the power to act in derogation of the constitutional rights of another can constitute state action. *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973); *Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153 (6th Cir. 1973).

The Plaintiff in this case caused the United States Marshal to serve summonses and complaints on the attachment defendants and to file his returns with the clerk of the court. The Plaintiff itself filed the originals of the summonses and complaints with the clerk, thereby legally binding the debts owed to Chemico. By taking these actions, under color of Mississippi Code § 11–31–1, *et seq.* and Rule 64 F.R.Civ.P., the Plaintiff was able to constrain the property belonging to Chemico. In this Court's opinion, these actions by the Plaintiff, which were intertwined with government officials, and which had behind them the sanction and the power of state law, sufficiently implicate the state in the taking of Chemico's property to require that due process safeguards be observed.

This conclusion is substantiated by numerous cases which have held unconstitutional state statutes which violated due process by permitting a prejudgment creditor to garnish or attach the property of his debtor which was in the hands of a third party by preparing a writ and delivering the same to the sheriff, who then served it upon the third-party garnishee, thereby freezing the debtor's property *pendente lite*. *Lynch v. Household Finance Corporation*, 360 F.Supp. 720 (D.Conn.1973) (Three-Judge Court); *Trapper Brown Construction Co., Inc. v. Electromech, Inc.*, 358 F.Supp. 105 (D.N.H.1973) (Three-Judge Court); *Schneider v. Margossian*, 349 F.Supp. 741 (D.Mass.1972) (Three-Judge Court).

Similarly, statutes authorizing prejudgment attachment of a defendant's real estate within the state under a procedure whereby a blank writ is completed by the plaintiff's attorney and delivered to the sheriff for service and filing with the Registry of Deeds without notice or hearing, have also been found to involve state action and, under the procedure therein, be violative of due process. *Terranova v. AVCO Financial Services of Barre, Inc.*, 396 F.Supp. 1402 (D.Vt.1975) (Three-Judge Court); *Bay State Harness Horse R & B Ass'n, v. PPG Industries, Inc.*, 365 F.Supp.

1299 (D.Mass.1973) (Three-Judge Court); *Gunter v. Merchants Warren National Bank*, 360 F.Supp. 1085 (D.Me.1973) (Three-Judge Court); *Clement v. Four North State Street Corp.*, 360 F.Supp. 933 (D.N.H.1973) (Three-Judge Court).

Furthermore, numerous courts have found state action in invalidating statutes authorizing self-help remedies for landlords and innkeepers which involves no action whatsoever by state officials. *Hall v. Garson*, 430 F.2d 430 (5th Cir. 1970); *Johnson v. Riverside Hotel, Inc.*, 399 F.Supp. 1138 (S.D. Fla.1975); *Ragin v. Schwartz*, 393 F.Supp. 152 (W.D.Pa.1975) (Three-Judge Court); *Barber v. Rader*, 350 F.Supp. 183 (S.D.Fla. 1972) (Three-Judge Court). In *James v. Pinnix*, 495 F.2d 206 (5th Cir. 1974), the court concluded that Mississippi's self-help repossession statute did not involve state action and distinguished the decision in *Hall v. Garson*, noting:

". . . in *Hall* the landlady seized goods to satisfy a debt arising out of an agreement having nothing to do with the goods. Such a taking closely resembles a seizure in satisfaction of a judgment—a function traditionally performed by a sheriff or other state agent. In the present case, by contrast, the appellant-creditor possessed and claimed no roving commission to extract appellee's goods to satisfy a separate debt. Rather, he had a specific purchase money security agreement in a particular item, and he seized only that item." *supra* at 208.

The *Hall* concept is clearly analogous to the case at bar where the Plaintiff has actually employed the Marshal in order to constrain moneys owing to Chemico which have absolutely no relationship to this litigation.

■ The effect of the service of the summonses and complaints upon the attachment defendants in this case has been to freeze the debts owing from these defendants to Chemico. This deprivation, although temporary, is nonetheless a deprivation of property sufficient to trigger the need for procedural due process pursuant to the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *Fuentes v. Shevin*, 407 U.S. 67, 85, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Brown v. Liberty Loan Corp. of Duval*, 392 F.Supp. 1023, 1031 (M.D.Fla. 1974); *Lynch v. Household Finance Corp.*, 360 F.Supp. 720, 723 (D.Conn.1973) (Three-Judge Court). Chemico has been subjected to a substantial deprivation of property by virtue of procedure which is suffused with state action. Chemico is therefore entitled to the protection afforded by the due process clauses of the Fifth and Fourteenth Amendments, which protect corporations as well as individuals. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Accordingly, this Court must determine whether Mississippi's Chancery Statutes comport with the requirements of due process under the established case law.

The central meaning of procedural due process was appropriately stated many years ago, the United States Supreme Court noting:

"Parties whose rights are to be affected are entitled to be heard; in order that they enjoy that right they must first be notified." *Baldwin v. Hale*, 1 Wall. 223, 233 (68 U.S.) 17 L.Ed. 531 (1863).

Procedural due process standards have recently been the subject of much Supreme Court litigation, beginning with *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1967). *Sniadach* held Wisconsin prejudgment garnishment procedures unconstitutional where no notice or hearing was required and there was an absence of judicial participation. The court stated, however, that such summary procedures may meet the requirements of due process in extraordinary situations. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that *Sniadach* due process requirements prevented the State of New York from summarily terminating welfare recipients' benefits without a predetermination hearing. *Sniadach's* predeprivation notice and hearing requirement was extended beyond the "necessities of life" property interest by the case of *Fuentes v. Shevin*,

407 U.S. 67, 88–90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The court in *Fuentes* held unconstitutional Florida and Pennsylvania prejudgment replevin procedures utilized to recover household goods purchased under conditional sales contracts on which the payments were allegedly overdue. Noting that even temporary non-final deprivation of property in which an individual had less than full title was sufficient to invoke due process, the court in *Fuentes* established that before a debtor can be deprived of his property, due process of law required notice and an opportunity for a hearing at which a determination could be made of the "validity, or at least the probable validity, of the underlying claim against the alleged debtor." *Fuentes*, supra, 407 U.S. at 97, 92 S.Ct. at 2003. In assessing the replevin statutes under consideration therein, the Court found safeguards which were provided to be inadequate, noting:

> "To be sure, the requirements that a party seeking a writ must first post a bond, allege conclusorily that he is entitled to specific goods, and open himself to possible liability in damages if he is wrong, serve to deter wholly unfounded applications for a writ. But those requirements are hardly a substitute for a prior hearing, for they test no more than the strength of the applicant's own belief in his rights. *Id.* at 83, 92 S.Ct. at 1995."

The Mississippi Chancery Attachments statutes do not even provide these minimal safeguards. The Plaintiff herein was able to attach Chemico's property and to interfere with Chemico's use of moneys due and owing to it without posting a bond, or alleging its entitlement to the specific indebtedness or, as heretofore noted, meaningfully opening itself to any liability should the attachment prove unfounded.

In 1974 the Supreme Court decided the case of *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). This case involved an attack on a Louisiana sequestration statute which provided debtors with considerably more protection than the replevin statutes which had been invalidated in *Fuentes*. The Louisiana

statute, although permitting a creditor to obtain an order of sequestration without a prior hearing, provided the order was obtained from a state court judge, upon an affidavit which truly showed the grounds for issuance of the order and which was supported by bond. The debtor was then entitled immediately to seek dissolution of the sequestration writ at a hearing in which the burden of sustaining the writ was upon the creditor. If the creditor failed in his burden, the writ would be dissolved and the debtor would be entitled to damages, including attorneys' fees. The court upheld the constitutionality of the Louisiana statute finding, inter alia, sufficient assurance that the procedure minimized the risk that the writ would be wrongfully issued.

Significantly, however, none of the safeguards deemed sufficient in *Mitchell* are present in the Mississippi Attachment in Chancery statutes. Attachment of Chemico's property occurred at the sole instance of the Plaintiff's attorney. Since no court order was required, there was no occasion for any particularized showing, by affidavit or otherwise, concerning the Plaintiff's entitlement to the moneys which have been bound. Furthermore, the property involved herein, unlike the situation in *Mitchell* involving property which was the subject of an installment sale by the creditor to the debtor, consists of funds owing to Chemico in which the Plaintiff has absolutely no direct, present interest. Accordingly, there is an absence in this case of the *Mitchell* court's concern for balancing the competing present interests of creditor and debtor in specific tangible property having a limited life.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Supreme Court declared unconstitutional the Georgia procedure allowing writs of garnishment to be issued by a court clerk upon the affidavit of the Plaintiff's attorney and the posting of a bond equal to twice the amount stated to be due the Plaintiff. The affidavit was required to state only that the defendant owed the plaintiff a sum of money and that

the plaintiff had "reason to apprehend the loss of the same or some part unless process of garnishment shall issue." *North Georgia Finishing, supra,* 721. The writ was then served upon the bank in which the defendant corporation maintained its account, thereby freezing the bank account in the hands of the garnishee bank, unless defendant posted a bond to secure the plaintiff-creditor. Without posting such a bond, the defendant could not avail itself of the opportunity which the statute provided to challenge the garnishment. In declaring this procedure violative of the due process clause of the Fourteenth Amendment the Supreme Court significantly concluded:

"The Georgia statute is vulnerable for the same reasons. [*as noted in Fuentes v. Shevin, supra*] Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer." 419 U.S. at 606, 95 S.Ct. at 722.

The court distinguished *Mitchell* on the grounds that the Louisiana writ of sequestration was issued by a judge rather than a clerk; upon an affidavit "going beyond mere conclusionary allegations and clearly setting out the facts entitling the creditor to sequestration"; and the fact that the statute upheld in *Mitchell* entitled the debtor to an immediate post-seizure hearing without the burden of sustaining the writ being with the creditor. Nor was the fact that the Georgia debtor could seek dissolution of the garnishment by posting a bond deemed ameliorative. *Id.,* at 726.

In this Court's opinion the Mississippi Attachment in Chancery statutes failed to pass constitutional muster for many of the reasons enunciated in *North Georgia Finishing, supra.* Under the Mississippi statutes, no judicial officer reviews the process which creates the attachment; in fact, not even the clerk performs this function. Secondly, no post-seizure procedure exists in Mississippi for dissolving the writ, except

for the defendant's inadequate remedy of posting a bond. Thirdly, while the Georgia statute was defective in requiring only the conclusory allegation in Plaintiff's affidavit that plaintiff apprehended the loss of the funds sought to be garnished, pursuant to the Mississippi statute, all that is required is that the attachment defendant be served with a summons and a bill of complaint stating a claim against the non-resident, absent or absconding debtor. This broad statutory scheme authorizes attachment of funds belonging to solvent non-resident corporations who are qualified to do business in Mississippi and are amenable to personal jurisdiction in Mississippi. Accordingly, there is no assurance that the procedure mandated by statute is in any way necessary and appropriate or that the Plaintiff even fears that the relevant funds will disappear unless attached.

Finally, while the Georgia statutes declared unconstitutional provided that the plaintiff post a bond equal to twice the amount of the claim, no such provision is even contained in the Mississippi Chancery Attachment statutes. In addition, the operation of this procedure is limited neither to funds in which the creditor has some claim or present interest nor, as applied in this case, to funds due and owing from the attachment defendants at the time they are served by the plaintiff.

A comparison of the provisions of the Mississippi chancery statutes with the teachings of *Fuentes, supra, Mitchell, supra,* and *North Georgia Finishing, supra,* can lead to only one conclusion—the Mississippi attachment in chancery statutes are unconstitutional, both on their face and as applied herein.

It is necessary, however, for this Court to examine the "extraordinary situation" exception enunciated in *Fuentes, supra,* which may save an otherwise unconstitutional statutory scheme. The tripartite test articulated in *Fuentes, supra,* is as follows:

"Only in a few limited situations has this court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly

necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 90–91, 92 S.Ct. at 1999–2000.

A purpose of the attachment in chancery mechanism is to confer upon Mississippi state courts quasi in rem jurisdiction over foreign defendants to whom debts are owing within the State and who would not otherwise be amenable to personal jurisdiction in this State. *Steele v. G. D. Searle & Company*, 483 F.2d 339, 344 (5th Cir. 1973). The court in *Steele* expressly left open the question whether the Mississippi chancery attachment statutes have complied with procedural due process as defined in *Fuentes* and its progeny. 483 F.2d 339, 342, fn. 7. Therefore, through the garnishment of a debt within the state which is owed to a non-resident, the state court acquires quasi in rem jurisdiction and is empowered to adjudicate any claim against a non-resident up to the amount of the garnished debt.

In applying the *Fuentes* tripartite test several courts have upheld attachment statutes which serve the purpose of securing quasi in rem jurisdiction. See *Holtzman v. Holtzman*, 401 F.Supp. 520 (S.D.N.Y.1975); *Ernest v. L. H. Shore & Associates*, 45 L.W. 2197 (1976). In these cases, however, the important governmental or general public interest which was effectuated by the attachment was that the state could only obtain jurisdiction over the non-resident defendants through the attachment procedure. In the case at bar, the Mississippi chancery attachment statutes apply to any "non-resident, absent or absconding debtor" regardless of whether that individual or company is subject to this state's in person-

am jurisdiction. Chemico is qualified to do business in Mississippi, was amenable to service of process in this action either through the Secretary of State or through his designated agent, and was in fact served at the office of its registered agent. Accordingly, the application of the chancery attachment process against funds owing to Chemico within Mississippi does not serve any valid jurisdictional purpose.

In *Jonnet v. Dollar Savings Bank of the City of New York*, 392 F.Supp. 1385 (W.D. Pa.1975), the Pennsylvania foreign attachment statute was held unconstitutional for failure to adhere to the first and third *Fuentes* requirements. In *Jonnet*, as in the instant case, the state attachment procedure had been utilized in federal court pursuant to Rule 64, F.R.Civ.P. The attachment secured quasi in rem jurisdiction therein over a foreign corporation not otherwise amenable to in personam jurisdiction. In declaring the statute unconstitutional, the court significantly noted:

"In this regard, however, it would seem that Pennsylvania's foreign attachment procedures are overbroad in that no distinction is made therein between their applicability to defendants such as Dollar Savings whose only amenability to service is through foreign attachment, and the applicability to other foreign defendants, over whom judgment may be obtained through use of the long-arm statute." *Jonnet, supra*, 392 F.Supp. at 1392.

In the case before the Court Chemico is a foreign corporation which not only may be, but was in fact served under Mississippi's long arm statute.

The leading case on the special need for prompt action, the second test of *Fuentes*, is *Coffin Bros. & Company v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1927), which allowed attachment to avoid the immediate harm of a bank failure. In the case before the Court, there is a wasting of assets alleged, but it is not stated to be so rapid and immediate to necessitate the

elimination of ordinary due process requirements.[9]

The third test of *Fuentes* is the requirement of strict state control. The Mississippi attachment in chancery procedure, however, totally abdicates effective judicial control of the use of the attachment procedure and places it within the sole discretion of the plaintiff's attorney. As stated by the Court in *Jonnet v. Dollar Savings Bank of the City of New York, supra*:

> "The *sine qua non* for due process as to any prejudgment procedure is the opportunity for responsible and impartial official evaluation of the need for resort to such remedy. It is to insure the availability of such evaluation that the requisites of prior notice and hearing have been set. Stated negatively, *Sniadach, Fuentes* and their progeny stand for the proposition that due process is not served when one party to a dispute may, by mere unexamined application to an official whose function is solely ministerial bring to bear the state's enormous confiscatory power on its behalf." 392 F.Supp. at 1392–93. See also *In Re Law Research Services, Inc.*, 386 F.Supp. 749 (S.D.N.Y. 1974); *Roscoe v. Butler*, 367 F.Supp. 574 (D.Md.1973) (Three-Judge Court).

In conclusion, even viewed as a mechanism for conferring quasi in rem jurisdiction, the Mississippi chancery attachment procedure fails to attain minimal standard of due process. The statutory procedure may be implemented in the sole and unreviewable discretion of the plaintiff's attorney and may be invoked even in cases, such as the case before the Court, where there is neither the need for swift action nor a foreign debtor who truly may not otherwise be subjected to the state court's jurisdiction.

Summarizing, this Court is of the opinion that the Mississippi attachment in chancery statutes are unconstitutional because they do not require the plaintiff to obtain any court ordered writ of sequestration or garnishment, the obligation of the attachment defendant to the non-resident principal defendant being bound by the service of process made at the sole instance and discretion of the plaintiff's attorney; no bond is required of the plaintiff nor is there any requirement that the plaintiff show, by affidavit or otherwise, that he is in any way entitled to the attachment; there is no review either prior to nor after service upon the attachment defendant of the propriety of the attachment by a disinterested, neutral judicial officer; the principal defendant can dissolve the attachment only by posting a satisfactory bond, and no procedure exists whereby the principal defendant can challenge the validity of the attachment on the grounds of procedural irregularity, excessiveness of the attachment, lack of merit of the underlying claim, or any other reason; only by prevailing at trial on the merits can the principal defendant obtain relief from the attached indebtedness; all debts owing to the principal defendant are subject to attachment regardless of where the debts arose, provided only that the attachment defendant be served within the State of Mississippi; and finally, the statutes do not require even a rudimentary *ex parte* hearing.

---

**9.** In an affidavit filed herein the attorney for Mississippi Chemical stated:

> "That to the best of his knowledge and belief, the said defendant has in recent times, discharged most of its employees with the result that, whereas said defendant had in excess of 1,000 employees at a time approximately two years ago, it now has only a small fraction of that number at its principal offices in New York City. That the said defendant has recently been sued for sums of money in excess of $15,000,000, and perhaps more, and

> that other demands have been made upon it by some of its former clients or customers. That to the best of his knowledge and belief, in recent times there are clear and substantial indications that such defendant will, in the near future, cease operations as a viable business entity, and that in the near future it will probably have only a small amount of assets, to the extent that it would be financially unable to pay or satisfy the damages sought from it by the plaintiff."

Alternatively, the Plaintiff seeks a substitution of the attachment at law procedure for the attachment at chancery procedure under the Mississippi Code of 1972, contending that any infirmities in the chancery attachments now in effect would thus be remedied and the attachments could continue in full force and effect. Initially, this Court notes that to allow this motion would seemingly be inconsistent with justice and equity, the Plaintiff having selected to use the chancery attachment statutes and voluntarily declining until the present to attempt to invoke the attachment at law statutes containing some of the safeguards lacking in the chancery attachment procedure. Such a procedure would allow the Plaintiff to retain intact the benefit of its initial utilization of the unconstitutional chancery attachment procedure and at the same time effectively eliminate the Defendant's entitlement to any damages, interest or attorneys' fees which might arise from a wrongful or unconstitutional deprivation of its property. This alone is sufficient reason to deny the motion of Mississippi Chemical to attach these funds pursuant to the at-tachment at law procedure. In this Court's opinion, however, there exists an even more fundamental reason for the denial of the Plaintiff's alternative motion for substitution of the attachment procedures.

The attachment at law statutes include Sections 11–33–1 to 107, Mississippi Code of 1972. Section 11–33–1 [10] provides, inter alia, that the Plaintiff may obtain such remedy for breach of contract as in the case sub judice. Sections 11–33–9 [11] and 11–33–11 [12] provide that the attachment at law may be initiated by Plaintiff's making an affidavit and giving bond in the amount of double the sum for which complaint is made, conditioned on paying any damages for wrongful suing out of the attachment. Section 11–33–33 [13] provides that ancillary attachments may be brought subsequent to the filing of the main action, thus allegedly permitting the attachment of funds to which Chemico became entitled after the initial filing of the chancery attachments. Section 11–33–45 [14] allows the Defendant to recover possession by giving bond for twice the value of the property, or under Sections

---

**10.** *§ 11–33–1. In what cases a remedy.*

The remedy by attachment shall apply to all actions or demands founded upon any indebtedness, or for the recovery of damages for the breach of any contract, express or implied, and to actions founded upon any penal statutes.

**11.** *§ 11–33–9. Grounds for attachment—affidavit.*

The creditor, his agent or attorney, shall make oath before a judge of the supreme court, a judge of a circuit court, or a chancellor, or before a clerk of the circuit court or chancery court or the deputy of such clerk, or any justice of the peace, or the mayor of any city, town or village, of the amount of his debt or demand, to the best of his knowledge and belief, and shall also make oath, to the best of his knowledge and belief, to one or more of the following grounds for attachment . . .

**12.** *§ 11–33–11. Bond.*

The creditor, his agent, or attorney, shall also give bond, with a sufficient surety or sureties, to be approved by the officer issuing the attachment, in double the sum for which the complaint is made payable to the defendant.

**13.** *§ 11–33–33. Ancillary attachment.*

When a suit shall have been commenced, the plaintiff may obtain an attachment against the defendant, or one or more of them, on making affidavit and giving bond as required in other cases of attachment, which attachment shall be granted, issued, executed, and returned by the same officers; and the like proceedings as far as applicable, shall be had thereon as in other cases. The affidavit, bond, and writ, when returned, shall be filed with the papers in the original suit, which shall not be delayed thereby.

**14.** *§ 11–33–45. Property may be replevied.*

The defendant, at any time before final judgment, may replevy the personal property seized and taken into possession by the officer serving an attachment, by giving to such officer a bond, with sufficient sureties, to be approved by him, payable to the plaintiff, in double the value of such property, conditioned to have said property forthcoming to answer and abide the judgment of the court in said suit, or, in default thereof, to pay and satisfy the judgment to the extent of the value of said property; and on the execution of such bond, the officer shall restore to the defendant the property so replevied, and shall return the bond so taken with the writ of attachment and all proceedings thereon. Such replevin shall not affect the lien of the attachment, or the proceedings thereon, as to any rights, credits, or choses in action of the defendant.

11–33–59 [15] and 11–33–63 [16] the Defendant may post bond in double the amount claimed by the Plaintiff and thus dissolve the attachment.

Pursuant to Section 11–33–83 [17] the Defendant can contest the propriety of an attachment by traversing the attachment as a defense in his answer. The defense may be heard separately or with the trial on the merits. *Christopher v. Brown*, 211 Miss. 322, 51 So.2d 579.

■ Initially, this Court notes that the effect of allowing Mississippi Chemical to proceed under the Attachment at Law statutes at this time would still subject Chemico to a substantial deprivation of property by a procedure under color of state law. Accordingly, Chemico is also entitled to the protection afforded by the due process clauses of the Fifth and Fourteenth Amendments for the reasons noted hereinabove in the discussion of the Mississippi chancery statutes. It thus becomes necessary to compare the provisions of Mississippi's Attachment at Law statutes with the teachings of *Fuentes, supra, Mitchell, supra,* and *North Georgia Finishing, supra,* to determine whether these statutes comport with the requirements of due process.

The Defendant Chemico contends that Mississippi's Attachment at Law statutes are unconstitutional on their face because they allow deprivations of property to be accomplished *ex parte,* without notice hearing, or judicial supervision, and because, in order to recover his property, a debtor is required to post a substantial bond or to suffer a long delay until a post-attachment hearing is held, at which time he must shoulder the burden of proof.

■ Firstly, this Court notes that the Mississippi Attachment at Law statutes make no provision for pre-attachment notice or hearing. All that is required is that the applicant for a writ of attachment submit an affidavit and bond, Mississippi Code, §§ 11–33–9, 11–33–11, 11–33–17, *supra.* Although the Plaintiff Mississippi Chemical now seeks a hearing before this Court on its motion to substitute the attachment at law

**15.** § *11–33–59. Bond to discharge attachment for a debt due.*

If any defendant in attachment for a debt due shall, at any time before the return thereof, execute and deliver to the officer serving the same, a bond, with two or more sufficient sureties, to be approved by said officer, payable to the plaintiff in attachment, in a penalty double the amount claimed by the plaintiff, conditioned to pay and satisfy any judgment which may be recovered by the plaintiff in the suit, with all costs, the attachment shall be thereby discharged; and all the property of every kind levied on, attached or seized by virtue thereof, shall be released and restored to such defendant. The bond shall be returned with the attachment; and in case of any recovery by the plaintiff in the suit, judgment shall be entered against the defendant and the sureties in the said bond. After the return of the attachment, the bond herein provided for may be given at any time before final judgment, and may be taken by the sheriff, or officer by whom the attachment was served, in case any of the attached property remains in his hands; otherwise, by the clerk of the court in which the attachment is pending.

**16.** § *11–33–63. Bond to discharge attachment for a debt not due.*

If a defendant in attachment for a debt not due, shall on or before the return-day thereof, execute and deliver to the officer serving the same, a bond, with two or more sufficient sureties, to be approved by said officers, payable to the plaintiff in attachment, in a penalty double the amount claimed by the plaintiff, conditioned to pay the said debt when it shall become payable and costs of the attachment, the said attachment shall be discharged thereby, and all the property attached shall be released to the defendant. The bond shall be delivered by the officer to the plaintiff. After the return of the attachment, the bond herein provided for may be given at any time before final judgment, and may be taken by the sheriff or officer by whom the attachment was served, in case any of the attached property remains in his hands, or by the clerk of the court in which the attachment is pending.

**17.** § *11–33–83. Answer traversing truth of alleged attachment grounds—trial of issue.*

The defendant in attachment may, as a defense in his answer, traverse the truth of the alleged grounds upon which the attachment was sued out. Upon such defense being filed, the court, in its discretion, upon motion of either or any party, may order a jury to be empaneled to try the issue, or it may submit such issue to the jury empaneled to try the case on its merits. If the jury shall find for the defendant, it shall assess damages against the plaintiff for wrongfully suing out the same.

procedures if the chancery attachment procedures are found to be unconstitutional, the Court cannot devise an attachment procedure which does not exist under these statutes. In considering the constitutionality of these statutes on their face, we must examine the attachment at law statutes as they exist and they do not provide for any pre-attachment hearing.

Secondly, the attachment at law statutes, as written, contemplate that writs of attachment may be authorized by a non-judicial officer such as a "clerk of the circuit court or chancery court or the deputy of such clerk". § 11–33–9, Mississippi Code of 1972. The Defendant contends that this absence of judicial supervision renders the attachment at law mechanism unconstitutional on its face under the established case law. This Court concurs. See *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra*; *Mitchell v. W. T. Grant, supra*, (statute authorized issuance of writ only by a judicial officer). As noted hereinabove, due process is not present when "one party to a dispute may, by a mere unexamined application to an official whose function is solely ministerial, bring to bear the state's enormous confiscatory power on its behalf." 392 F.Supp. at 1392, 93.

The Court notes that Chemico now seeks to obtain the writ of attachment from this Court rather than from a clerk. This election on the part of the Plaintiff does not, however, affect the contention of the Defendant that the attachment at law statutes on their face violate due process by allowing writs to be issued ministerially by non-judicial officers. Furthermore, any determination by this Court would have to be based on affidavits, a procedure recognized as unsound and susceptible of error where, as here, a fault standard governs the existence *vel non* of the underlying debt. See *Mitchell v. W. T. Grant Company, supra*.

The Defendant Chemico next attacks the attachment at law statutes because of their failure to provide the debtor with adequate countervailing procedures. While noting that Section 11–33–45, Mississippi Code of 1942, provides for a removal of the attachment by posting a bond for twice the value of the property attached, this Court agrees with the Defendant's observation that this provision, which allows replevy by the Defendant of "personal property seized and taken into possession by the officer serving an attachment", appears to apply more to chattels rather than to funds.

The only countervailing procedures available to the Defendant would appear to be found in §§ 11–33–59 and 11–33–63, Mississippi Code of 1972, which call for a bond in an amount double the claim of the Plaintiff. The amount of the Plaintiff's claim in this action as originally filed is $25,330,000, thus requiring a bond in the amount of approximately $50,000,000 in order to discharge the attachment sought by the Plaintiff. Moreover, the Plaintiff states in the alternative motion filed herein that such amount probably will be amended to conform with the amount of damages occurring after the filing of the action.

In this regard, the Court notes that the Plaintiff has moved in its alternative motion for this Court, after a hearing thereon, to set bond for the Plaintiff in an amount double the sum of which the complaint is made, or approximately $1,480,000 as of the time the alternative motion was filed. As heretofore noted, the amounts due and owing to Chemico from the attachment Defendants have substantially increased over the past several months and the amounts the principal Defendant is owed by the attachment Defendants as of this date approximates $2,175,000. More importantly, however, the procedural safeguard of a plaintiff's posting bond may well be insufficient to satisfy due process requirements. As the court noted in *Fuentes, supra*:

"The minimal deterrent effect of a bond requirement is, in a practical sense, no substitute for informed evaluation by a neutral official. More specifically, as a matter of constitutional principle, it is no replacement for the right to a prior hearing that is the only truly effective safeguard against arbitrary deprivation of property. While the existence of these other, less effective safeguards may be

among the considerations that affect the form of hearing demanded by due process, they are far from enough by themselves to obviate the right to a prior hearing of some kind." 407 U.S. at 83–84, 92 S.Ct. at 1995–96.

Finally, the Defendant contends that the Mississippi Attachment at Law statutes are constitutionally deficient in failing to afford a creditor an immediate post attachment hearing on the validity of the attachment. A defendant who wishes to contest the propriety of an attachment must traverse the attachment as a defense in his answer. Section 11–33–83, Mississippi Code of 1972. There is no guarantee of an immediate trial on the issue of the validity of the attachment. In fact, the statute does not guarantee a trial on the attachment prior to the trial on the merits; the decision whether to afford such a separate trial on the attachment residing solely in the discretion of the trial court. Section 11–33–83, Mississippi Code of 1972; *Christopher v. Brown*, 211 Miss. 322, 51 So.2d 579 (1951). Moreover, the burden of proof on the issue of the validity of the attachment is placed on the defendant. Section 11–7–59, Mississippi Code of 1972.

This Court concurs with Chemico that the failure of the Mississippi Attachment at Law statutes to make available to a defendant an immediate post-seizure hearing renders the statutory procedure constitutionally defective. *North Georgia Finishing, supra*; cf. *Mitchell v. W. T. Grant Company, supra*. Likewise, the allocation of the burden of proof both as to facts and law on the defendant has been held to violate due process. See *Douglas Research & Chemical, Inc. v. Solomon*, 388 F.Supp. 433 (E.D.Mich. 1975) (Three-Judge Court); cf. *Mitchell v. W. T. Grant Company, supra*.

The Plaintiff Mississippi Chemical relies heavily on the Supreme Court decision in *Mitchell v. W. T. Grant Company, supra*, in arguing the validity of the Mississippi Attachment at Law statutes under consideration. The Louisiana statute upheld therein by the Supreme Court, although permitting an order of sequestration without a prior hearing, did provide that the order was to be obtained from a state court judge, upon an affidavit which truly showed the grounds for issuance of the order and which was supported by a bond. The Mississippi statute allows the issuance of the attachment order by a clerk or deputy clerk and does not require an affidavit to allege specific facts, as opposed to conclusory allegations. The debtor in *Mitchell, supra*, was entitled to immediately seek dissolution of the sequestration writ at a hearing in which the burden of sustaining the writ was upon the creditor. The Mississippi Attachment at Law statutes do not provide the debtor with the adequate countervailing procedures deemed sufficient under the Louisiana statute.

Likewise, this Court finds that the discussion hereinabove of the "extraordinary situation" exceptions of *Fuentes, supra*, is equally applicable to the attachment at law statutes and cannot save this otherwise unconstitutional statutory scheme. A further examination of the three tests of *Fuentes, supra* is unnecessary and would be unduly repetitious.

Accordingly, this Court is of the opinion that while the attachment at law procedure provides many more safeguards for a principal defendant than the attachment in chancery procedure, the statutory scheme is still constitutionally deficient in many respects and presents an adequate reason to deny the Plaintiff's alternative motion to substitute the attachment at law procedure for the attachment in chancery procedure this Court has found to be clearly unconstitutional on its face and as applied to this Defendant.

Secondly, it is the contention of the Defendant Chemico that both the Mississippi Chancery Attachment statutes and the Attachment at Law statutes violate due process by permitting the immobilization of the debts existing between foreign corporations which arise from contracts having no nexus with the State of Mississippi. In the case sub judice the indebtedness of the original attachment Defendant, Continental Casualty Company, did arise from work to be

performed in the State of Mississippi. As heretofore noted, Continental Casualty Company has been dismissed as an attachment defendant. The monies owed Chemico from Brown & Root, Inc. and Monsanto at the time this motion was filed represented sums resulting from contracts with these two non-Mississippi corporations for work which had been performed in the States of New Mexico and Florida, respectively. The Court has been informed that the increases in the amounts of the attached funds owed to the Defendant by these two corporations arise out of the same out-of-state contracts. Likewise, all of the sums which subsequently became due and owing from Bernard & Burk, Inc. allegedly arise out of contracts which were to be performed entirely outside of the State of Mississippi.

It has long been held that a party may attach property within its borders belonging to a non-resident for the purpose of securing quasi in rem jurisdiction over that non-resident. *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905). Relying on the principle enunciated in *Harris* that a debt follows the debtor, the Fifth Circuit in *Steele v. G. D. Searle & Company*, 483 F.2d 339 (5th Cir. 1973) held that the Mississippi Chancery Attachment statutes could be utilized in order to secure jurisdiction over a foreign defendant. The court therein found that jurisdiction was present where certain of the debts which had been attached were owing from Mississippi corporations as a result of transactions conducted in Mississippi. This result was consonant with *Harris v. Balk*, where the garnishee who was found within the state and whose indebtedness to the foreign defendant created jurisdiction-by-attachment, was an individual. The difficulty in applying *Harris v. Balk* with respect to a multistate corporate debtor, however, was set forth by the Court in *Steele, supra* as follows:

"The Supreme Court has never expressly extended the rule of *Harris* [*v. Balk*] to include garnishment of corporate debtors. 4 Wright and Miller, Federal Practice and Procedure, 278, n. 43. There is no basis in the cases, however, for a blanket immunity, protecting all those who are creditors of corporations from quasi in rem jurisdiction. The potential for injustice is, of course, obvious. While individual garnishees can usually be personally served only where they are actually found or where they reside, many large corporate garnishees are available for personal service in a score of states or more. This problem can be dealt with in light of present law through the case by case application of the flexible standards of fairness urged by appellee, or through a refinement of the notions of the situs of a debt in order to exclude from garnishment sums owed by multi-state corporations on transactions having no connection with the forum. Even under the most restricted notions of situs, however, attachment jurisdiction would be permissible here, since a portion of the monies owed to appellee by resident of Mississippi does relate to transactions conducted in Mississippi." 483 F.2d at 347–348, n. 24.

In *Steele, supra*, the Court merely held that garnishment of a debt owing from a Mississippi corporation as the result of a transaction within Mississippi sufficed to confer jurisdiction over the non-resident defendant. In the case sub judice, Chemico does not question this Court's jurisdiction because it has been served through its resident agent in Mississippi.

Thus the attachments imposed by the indebtedness of Brown & Root, Inc. and Monsanto, and presumably that of Bernard & Burk, Inc., are typical of the type of injustice contemplated in *Steele, supra*. The attachment of these debts arising from transactions having no connection whatsoever with this forum are not required to secure jurisdiction over the non-resident defendant herein.

Although the failure of the Mississippi Chancery Attachment statutes and Attachment at Law statutes to provide the refinements of the notions of the situs of a debt as enunciated in *Steele, supra* may render these statutes constitutionally defective, as urged by the Defendant herein, this Court restricts its holding to the finding

that under the facts of this case, fairness and justice dictate an exclusion from garnishment of the sums owed Chemico by Monsanto, Brown & Root, Inc., and Bernard & Burk, Inc., arising out of transactions having no connection whatsoever with the State of Mississippi. This holding applies equally to sums attached pursuant to the Chancery Attachment statutes, sums accumulated subsequent to the initial Attachment in Chancery, and sums that would be attached by a substitution at this time of the Attachment at Law provisions.

This determination finds substantial support in the recent decision by the United States Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683, decided June 24, 1977 which held that all assertions of state court jurisdiction, including *quasi in rem* jurisdiction, must meet the "fair play and substantial justice" standard of *International Shoe v. State of Wash.*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. In finding that the state's assertion of jurisdiction in that case was inconsistent with this standard, the Supreme Court significantly noted:

"It appears, therefore, that jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state court jurisdiction must satisfy the *International Shoe* standard. For the type of *quasi in rem* action typified by *Harris v. Balk* and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum.

\* \* \* \* \* \*

We are left, then, to consider the significance of the long history of jurisdiction based solely on the presence of property in a State. Although the theory that territorial power is both essential to and sufficient for jurisdiction has been undermined, we have never held that the presence of property in a State does not automatically confer jurisdiction over the owner's interest in that property. This history must be considered as supporting the proposition that jurisdiction based solely on the presence of property satisfies the demands of due process, *cf. Owenbey v. Morgan, supra,* [256 U.S. 94] at 111, [41 S.Ct. 433, 65 L.Ed. 837] (1921), but it is not decisive. "[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage. *Cf. Sniadach v. Family Finance Corp., supra,* [395 U.S.] at 340, [89 S.Ct. 1820 at 1822]; *Wolf v. Colorado,* 338 U.S. 25, 27 [69 S.Ct. 1359, 1361, 93 L.Ed. 1782] (1949). The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state court jurisdiction that is fundamentally unfair to the defendant.

We therefore conclude that all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.

IV.

The Delaware courts based their assertion of jurisdiction in this case solely on the statutory presence of appellants' property in Delaware. Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. Appellants' holdings in Greyhound do not, therefore, provide contacts with Delaware sufficient

to support the jurisdiction of that State's courts over appellants. If it exists, that jurisdiction must have some other foundation."

Finally, the determination of this Court hereinabove obviates the necessity of determining the motion of Chemico that should this Court decline to hold the Mississippi Chancery Attachment statutes unconstitutional, it should, in the alternative, vacate the attachments to the extent of the amounts which have become due and owing subsequent to the service of process upon the attachment Defendants.

 Furthermore, this Court finds completely without merit the contention of the Plaintiff that the doctrine of laches should be applied against Chemico under the circumstances of this case. The doctrine of laches can only be asserted by a party who has been prejudiced by the delay. *Florida Bahamas Lines v. Steele Barge "Star 800" of Nassau,* 433 F.2d 1243, 1250 (5th Cir. 1970). In the case at bar the Plaintiff has in no way been prejudiced by the delay in challenging the constitutionality of the attachment statutes and has made no showing of prejudice. The only recourse to Chemico in this case was a motion to have the entire chancery attachment procedure declared unconstitutional. Such a motion is costly and time consuming and the Defendant was certainly justified in the delay in filing this motion.

Accordingly, it is the finding of this Court that the Mississippi Attachment in Chancery statutes deprive the Defendant Chemico of Property under state law and violate procedural due process, both on their face and as applied, in that substantial deprivations of property are effected without notice, opportunity for hearing or any other safeguards reasonably calculated to minimize the risk of loss or deprivation. The attachments secured thereunder are unconstitutional and should therefore be vacated in their entirety. Secondly, the alternative motion of the Plaintiff Mississippi Chemical to substitute the attachment at law procedure for the chancery attachment procedure should be denied because the Attachment at Law statutes also contain defects which render them constitutionally deficient and to allow substitution under the circumstances of this case would be inconsistent with justice and equity. Finally, all attachments imposed on the indebtedness of non-Mississippi corporations to the Defendant as a result of transactions having no connection with the State of Mississippi should be vacated and not subsequently authorized.

RECOMMENDED this the 19th day of October, 1977.